UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE TREVINO,<br><br>           Plaintiff,<br><br>      v.<br><br>CITY OF BAKERSFIELD, et al.,<br><br>           Defendants. | Case No.: 1:14-cv-1873 - JLT<br><br>PRETRIAL ORDER<br><br>Deadlines:<br><br>Motions in Limine Filing: 6/21/2016<br>Oppositions to Motions in Limine: 7/5/2016<br>Hearing on Motions in Limine: 7/18/2016<br><br>Trial Submissions: 7/8/2016<br><br>Jury trial:  7/26/2016 at 8:30 a.m. |

Plaintiff Jesse Trevino, who is deaf, asserts that Bakersfield Police Officer Ryan Miller used excessive force in the course of detainment.  Accordingly Plaintiff seeks to hold Officer Miller liable for negligence and battery under California law, as well as a violation of the Fourth Amendment.  In addition, Plaintiff contends the City of Bakersfield is liable for battery.

**A.      JURISDICTION/ VENUE**

The Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 and 1343. Further, Plaintiff's claims arise out of events that occurred in Kern County, California.  Accordingly, venue is proper in the United States District Court for the Eastern District of California sitting in Bakersfield.  *See* 28 U.S.C. § 1391.

1

**B.     JURY TRIAL**

Plaintiff and Defendants have made timely demands for a jury trial on all issues.  Thus, the trial will be by jury.

**C.     UNDISPUTED FACTS**

1. The incident upon which this action is premised, occurred on or about October 16, 2013.
2. The Plaintiff's claims arise out of an incident that took place in the City of Bakersfield, State of California, and within this judicial district.
3. Defendant Ryan Miller is a police officer employed by the Bakersfield Police Department.
4. At the time of this incident, Officer Miller was working without a partner in his car.
5. Defendant Miller had been advised by dispatch that there was a possible burglary in progress.  The suspect was reportedly kicking in the front door and then trying to use a rock to strike the door handle.
6. Officer Miller was advised that the suspect was a Hispanic male, 40s, with glasses, wearing a blue shirt and dark pants.
7. Mr. Trevino matched the description of the suspect Officer Miller was looking for.
8. Mr. Trevino was the individual who was kicking the door and trying to use a rock to get inside.
9. As soon as Officer Miller arrived, he saw the Plaintiff, who matched the description of the suspect, walking westbound towards the parking lot.
10. At the time, Officer Miller estimates he was approximately 30 yards from Mr. Trevino.
11. Initially, Officer Miller called out "hey man, can I talk to you?" and then he yelled "Stop. Police."  Mr. Trevino kept walking and as such, Officer Miller ran after him.
12. Defendant Officer Ryan Miller then ran after Mr. Trevino.
13. During this time, Officer Miller continued to yell "stop police".
14. When Defendant Officer Miller reached Mr. Trevino, he put his right forearm into Mr. Trevino's back and used that momentum to push Mr. Trevino onto the ground.
15. It was not until after Mr. Trevino fell that he said to Officer Miller "I cant hear you."

16. Officer Miller put Mr. Trevino in handcuffs because he still felt he had a crime in progress.

17. Officer Miller then noticed swelling in Mr. Trevino's left wrist and called for an ambulance

18. Approximately three minutes elapsed between the time Officer Miller reached Mr. Trevino and when he called for an ambulance.

19. Mr. Trevino initially declined medical treatment

20. The Plaintiff was not wearing any type of hearing aid or mechanical apparatus that would have put Officer Miller on notice that Mr. Trevino was hard of hearing.

**D.     DISPUTED FACTS**

1. Whether or not Mr. Trevino saw Officer Miller pursuing him.

2. Whether or not Mr. Trevino increased his pace when he was walking from Officer Miller following Officer Miller's orders.

3. Whether Officer Miller pushed Mr. Trevino onto the grass or hard ground.

4. Whether or not Officer Miller knew or should have known Mr. Trevino was hearing impaired and/or had actual or constructive notice that he was hearing impaired.

5. Whether Mr. Trevino looked at or saw Officer Miller or knew any police officer was at the apartment complex until after Ryan Miller had pushed him down.

6. Whether Mr. Trevino did anything to indicate he heard, was aware of, or acknowledged Ryan Miller's commands prior to Ryan Miller pushing him down.

7. Whether Mr. Trevino was walking at a leisurely, constant pace while Ryan Miller pursued him and pushed him down from behind.

8. The causation of Mr. Trevino's claimed injuries, and the nature and extent of those injuries, as well as the nature and extent of Mr. Trevino's loss of quality of life resulting from this incident.

9. The content of Ryan Miller's training with POST and the Bakersfield Police Department regarding identifying and interacting with potentially hearing impaired members of the public, and whether Officer Ryan Miller should have recognized potential reasons for Mr. Trevino's behavior other

than willful noncompliance.

10. Whether Ryan Miller used an appropriate amount of force given the totality of the facts and circumstances presented to him.

11. Whether Ryan Miller's use of his full body weight, running at a full sprint, to push Mr. Trevino down from behind was a reasonable amount of force given the totality of the facts and circumstances presented to Ryan Miller.

12. Whether Defendant Ryan Miller violated Plaintiff's Fourth Amendment right to be free from the use of excessive force, or otherwise unlawfully battered Plaintiff or was negligent in his conduct towards Plaintiff, resulting in the injuries complained of by Plaintiff.

13. Whether or not Plaintiff Jesse Trevino was completely deaf at all relevant times.

14. The reasonableness and necessity of Plaintiff's medical care and the costs of that care.

**E.    DISPUTED EVIDENTIARY ISSUES**

1. Exclusion from evidence certain events of Mr. Trevino's life and day that were not known to Officer Ryan Miller at the time of his interaction with Mr. Trevino.

2. Limitation of certain lines of questioning of expert witnesses on matters irrelevant to the subject matter of the lawsuit.

**F.    RELIEF SOUGHT**

Plaintiff seeks general damages, special damages, punitive damages, prejudgment interest, post-judgment interest pursuant to 28 U.S.C. § 1961(a), attorneys' fees and costs, and such other relief as the Court deems just and proper.  Defendants seek dismissal of this case, costs, and attorneys' fees under 42 U.S.C. § 1988 and 42 U.S. C. § 1927, Local Rules 54-292 and 54-293, and any and all other applicable statutes and rules.

**G.    POINTS OF LAW**

**1.    Excessive Force**

The Due Process Clause of the Fourteenth Amendment protects individuals who have not yet been convicted of a crime "from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 388 (1989).  However, allegations of excessive force during the course of an arrest are analyzed under the Fourth Amendment, which prohibits arrests without probable cause or

4

other justification. *Id.* ("claim[s] that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' … are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard"); *see also Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) ("the use of force to effect an arrest is subject to the Fourth Amendment's prohibition on unreasonable seizures").

The Supreme Court explained,

> As in other Fourth Amendment contexts . . . the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Graham*, 490 U.S. at 396-97 (1989) (internal citations omitted).  In applying this standard, the Ninth Circuit instructs the fact-finder to consider "the totality of the circumstances and . . . whatever specific factors may be appropriate in a particular case." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

Factors to be considered in evaluating whether the force used was reasonable include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).  In addition, the fact-finder may consider "whether officers administered a warning, assuming it was practicable." *George v. Morris*, 736 F.3d 829, 837-38 (9th Cir. 2013) (citing *Scott v. Harris*, 550 U.S. 372, 381-82 (2007).  Ultimately, the "reasonableness" of the actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

### 2. *Monell* Liability

As a general rule, a local government entity may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  Rather, a local government entity may only be held liable if it inflicts the injury of which a plaintiff complains. *Gibson v. County of Washoe,* 290 F.3d 1175, 1185 (9th Cir. 2002).  Thus, a government entity may be sued under Section 1983 when a governmental policy or custom is the

cause of a deprivation of federal rights. *Monell*, 436 U.S. at 694.

To establish liability, Plaintiff must demonstrate: (1) he was deprived of a constitutional right; (2) the County had a policy (3) that amounted to deliberate indifference of his constitutional right; and (4) the policy "was the moving force behind the constitutional violation." *See Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)); *see also Monell*, 436 U.S. at 690-92. There are three methods by which a policy or custom of a government may be demonstrated when:

> (1) A longstanding practice or custom…constitutes the standard operating procedure of the local government entity;
>
> (2) The decision-making official was, as a matter of law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or
>
> (3) An official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Pellum v. Fresno Police Dep't*, 2011 U.S. Dist. LEXIS 10698, at *8 (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005)). Furthermore, a policy may be inferred if there is evidence of repeated constitutional violations for which officers were not reprimanded. *Menotti*, 409 F.3d at 1147.

A policy amounts to deliberate indifference where "the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need." *Mortimer v. Baca*, 594 F.3d 714, 722 (9th Cir. 2010) (citing *Oviatt*, 954 F.2d at 1477-78); *accord Canton*, 489 U.S. at 390. To establish deliberate indifference by a government, "the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Gibson,* 290 F.3d at 1186 (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994)).

**3.     Battery**

Under California law, a battery occurs when: "[a] defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) [the] plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to [the] plaintiff." *Brown v. Ransweiler*, 89 Cal.Rptr.3d 801, 811 (2009). Thus, the claim is analogous to a

claim for excessive use of force. *Brown*, 89 Cal. Rptr.3d at 811; *see also Edson v. City of Anaheim,* 63 Cal.App.4th 1269, 1272 (1998) (an officer who uses force in the course of an arrest is not liable for battery unless the plaintiff proves that the force used was unreasonable). Consequently, a claim for battery under California law is analyzed under the Fourth Amendment's reasonableness standard. *Edson*, 63 Cal. App. 4th at 1274; *Saman v. Robbins*, 173 F.3d 1150, 1156-57 & n. 6 (9th Cir. 1999).

**4.     Negligence**

To establish a claim for negligence, Plaintiff "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003). In general, "the plaintiff must show that the defendant owed a duty to the plaintiff." *See John B. v. Superior Court*, 38 Cal. 4th 1177, 1188 (2006). The existence of a duty is a matter of law for a court to decide, and under California law, police officers have a duty to use reasonable force. *See Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1100 (2004).

**5.     Qualified Immunity**

Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity "balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

The threshold inquiry to a qualified immunity determination is whether the facts alleged, when taken in the light most favorable to the plaintiff, demonstrate that the official's conduct violated a statutory or constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a constitutional violation occurred, the court must next determine whether the statutory or constitutional right was "clearly established." *Id.* A right is "clearly established" in the context of qualified immunity if "it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted' . . . or whether the state of the law [at the time of the violation] gave 'fair warning' to the official[] that [his] conduct was unconstitutional." *Clement v. Gomez*, 298 F.3d 898, 906 (2002) (quoting *Saucier,* 533 U.S. at 202).

Case 1:14-cv-01873-JLT   Document 43   Filed 05/17/16   Page 8 of 17

**6.     Punitive Damages**

Plaintiff has the burden of proving what, if any, punitive damages should be awarded by a preponderance of the evidence. NINTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS § 5.5 (2009). The jury must find that the defendant's conduct is "motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1986); *see also Larez v. Holcomb*, 16 F.3d 1513, 1518 (9th Cir. 1994).

**H.     ABANDONED ISSUES**

Previously, the parties stipulated to the dismissal of following causes of action: (1) violation of the Fourth Amendment against the City of Bakersfield; (2) second cause of action for violation of the Rehabilitation Act against Defendant Ryan Miller; (3) third cause of action for violation of Title II of the Americans with Disabilities Act of 1990 against Ryan Miller; (4) fourth cause of action for violation of the Bane Civil Rights Act; and (6) sixth cause of action for Intentional Infliction of Emotional Distress. (Docs. 34 and 35)

**I.     WITNESSES**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses. NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

**Plaintiffs' Witness List:**

1. Plaintiff Jesse Trevino
2. Defendant Ryan Miller
3. Charles Sherman
4. Andrea Pflugh
5. David Brantley
6. Deron Miller
7. Geniece Trevino
8. Isabel Fernandez

8

9. Jeffrey Perkins, EMT
10. Julian Trevino
11. Kenneth Perkins
12. Larry Fernandez
13. Rosemary Sepulveda
14. Diana Lee
15. Randy Lee
16. Zach Grasmick
17. Samantha Hsu
18. Matthew Malerich, M.D. (Expert)
19. Roger Clark (Expert)
20. Stephen Denaro, M.D. (Expert)
21. Linda K. Mather, OTR/L, CHT (Expert)
22. Curtis Cope (Expert)
23. Donald Huene (Expert)
24. Donald Wong, M.D. (Expert)
25. Vonda Kittle, MA (Expert)
26. William Luxford, M.D. (Expert)
27. Gary Zerlin, M.D. (Expert)

**Defendant's Witness List:**

1. Plaintiff Jesse Trevino
2. Defendant Ryan Miller
3. Charles Sherman
4. Andrea Pflugh
5. David Brantley
6. Deron Miller
7. Geniece Trevino
8. Isabel Fernandez

9. Jeff Perkins
10. Julian Trevino
11. Kenneth Perkins
12. Larry Fernandez
13. Rosemary Sepulveda
14. Diana Lee
15. Randy Lee
16. Zach Gransmick
17. Samantha Hsu
18. Curtis Cope (Expert)
19. Donald Huene (Expert)

**J.    EXHIBITS, SCHEDULES AND SUMMARIES**

The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

**Plaintiff's Exhibits**

1. Photographs of Apartment Complex, including aerial view.
2. Photographs of Plaintiff
3. Photographs of Defendant
4. Hall Ambulance Records
5. CAD Report
6. Bakersfield Police Department General Offense Report
7. Bakersfield Police Policies
8. POST Learning Domains, including but not limited to Nos. 1, 2, 3, 5, 15, 18, 20, 23, 33, and 37.
9. Bakersfield Police Department training materials regarding Learning Domain 37.
10. Personnel file for Ryan Miller, including but not limited to training records

11. Excerpts from the Roger Clark file.
12. Excerpts from Curtis Cope file.
13. Excerpts from Donald Huene file.
14. Audio of Radio Traffic
15. Audio of 911 call.
16. Deposition transcripts
17. Exhibits to Depositions
18. Select medical records/xrays for Plaintiff Jesse Trevino, including: Mercy Southwest Hospital, Pair & Marotta Physical Therapy, Lee's Clinical Pharmacy, Mercy Orthopedic Spine and Head Center, and Linda K. Mather.
19. Anatomical and medical illustrations, including digital illustrations
20. All written discovery referenced in Part (12) below
21. Photographs of door know and/or door
22. Select employment records
23. 911 audio

**Defendants' Exhibits**

1. Photographs of Apartment Complex
2. Hall Ambulance Records
3. CAD Report
4. Bakersfield Police Policies
5. Excerpts from Curtis Cope file
6. Excerpts from Donald Huene file
7. Audio of Radio Traffic
8. Exhibits to Depositions
9. Select medical records/xrays
10. Photographs of door know and/or door
11. Select employment records
12. 911 audio

Any of the exhibits identified herein that have not been provided to the opponent, **SHALL** be provided via e-mail or overnight mail to be received on or before **June 10, 2016**.[1] On or before **June 20, 2016**, counsel **SHALL** meet and confer to discuss any disputes related to the above listed exhibits and to pre-mark and examining each other's exhibits.

1. At the exhibit conference, counsel will determine whether there are objections to the admission of each of the exhibits and will prepare separate indexes; one listing joint exhibits, one listing Plaintiff's exhibits and one listing Defendant's exhibits. In advance of the conference, counsel must have a complete set of their proposed exhibits in order to be able to fully discuss whether evidentiary objections exist. <u>Thus, any exhibit not previously provided in discovery **SHALL** be provided at least five court days in advance of the exhibit conference</u>.

2. At the conference, counsel shall identify any duplicate exhibits, i.e., any document which both sides desire to introduce into evidence. These exhibits **SHALL** be marked as a joint exhibit and numbered as directed above. Joint exhibits **SHALL** be admitted into without further foundation.

All Joint exhibits will be pre-marked with numbers preceded by the designation "JT" (e.g. JT/1, JT/2, etc.). Plaintiff's exhibits will be pre-marked with numbers beginning with 1 by the designation PX (e.g. PX1, PX2, etc.). Defendant's exhibits will be pre-marked with numbers beginning with 501 preceded by the designation DX (e.g. DX501, DX502, etc.). The Parties SHALL number each page of any exhibit exceeding one page in length (e.g. PX1-1, PX1-2, PX1-3, etc.).

If originals of exhibits are unavailable, the parties may substitute legible copies. If any document is offered which is not fully legible, the Court may exclude it from evidence.

Each joint exhibit binder shall contain an index which is placed in the binder before the exhibits. The index shall consist of a column for the exhibit number, one for a description of the exhibit and one column entitled "Admitted in Evidence" (as shown in the example below).

///
///
///

---

[1] Plaintiff SHALL provide defense counsel copies of any updated medical records by June 10, 2016 or no later than one week before the deposition of Dr. Malerich, whichever is earlier.

**INDEX OF EXHIBITS**

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE |
|---|---|---|

3. As to any exhibit which is not a joint exhibit but to which there is no objection to its introduction, the exhibit will likewise be appropriately marked, i.e., as PX1, or as DX501 and will be indexed as such on the index of the offering party. Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

4. Each exhibit binder shall contain an index which is placed in the binder before the exhibits. Each index shall consist of the exhibit number, the description of the exhibit and the three columns as shown in the example below.

**INDEX OF EXHIBITS**

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|---|---|---|---|---|

5. On the index, as to exhibits to which the only objection is a lack of foundation, counsel will place a mark under the column heading entitled "Admissible but for Foundation."

6. On the index, as to exhibits to which there are objections to admissibility that are not based solely on a lack of foundation, counsel will place a mark under the column heading entitled "Other Objections."

After the exhibit conference, Plaintiff and counsel for the defendants **SHALL** develop four complete, legible sets of exhibits. The parties **SHALL** deliver three sets of their exhibit binders to the Courtroom Clerk and provide one set to their opponent, no later than 4:00 p.m., on **July 22, 2016.** Counsel **SHALL** determine which of them will also provide three sets of the joint exhibits to the Courtroom Clerk.

7. The Parties **SHALL** number each page of any exhibit exceeding one page in length.

K.      DISCOVERY DOCUMENTS

**Plaintiff's Discovery**

1. Plaintiff and Defendants' Initial Disclosures and Exhibits thereto.

2. Plaintiff's and Defendants' Expert Disclosures and Exhibits thereto.

3. Plaintiff's Responses to Interrogatories.

4. Plaintiff's Responses to Requests for Production.

5. Defendants' Reponses to Interrogatories.

6. Defendants' Responses to Requests for Production.

7. Defendants' Responses to Requests for Production at Time of Deposition.

**Defendants' Discovery**

1. Plaintiff Jesse Trevino's Responses to Requests for Production of Documents, Set No. 1 propounded by Defendant Ryan Miller and City of Bakersfield.

2. Plaintiff Jesse Trevino's Responses to Interrogatories, Set No. 1, propounded by Defendant Ryan Miller.

3. Plaintiff Jesse Trevino's Supplemental Responses to Interrogatories, Set No. 1, propounded by Defendant Ryan Miller.

4. Plaintiff Jesse Trevino's Responses to Interrogatories, Set No. 1, propounded by Defendant City of Bakersfield.

In the event the parties wish to admit any portion of a discovery document, the specific discovery request, e.g., interrogatory, request for admission, must be redacted so that any extraneous request/response is omitted.

**L. FURTHER DISCOVERY OR MOTIONS**

No further discovery is sought by either party.

**M. MOTIONS IN LIMINE**

Any party may file motions in limine. The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial. "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984); *Jonasson v. Lutheran Child and Family Services*, 115 F. 3d 436, 440 (7th Cir. 1997). The Court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. *Id.*

**In advance of filing any motion in limine, counsel SHALL meet and confer to determine**

**whether they can resolve any disputes and avoid filing motions in limine.  Along with their motions in limine, the parties SHALL file a certification demonstrating counsel have in good faith met and conferred and attempted to resolve the dispute.  Failure to provide the certification may result in the Court refusing to entertain the motion.**

Any motions in limine must be filed with the Court by **June 21, 2016**.  The motion must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial. Any opposition to the motion must be served on the other party, and filed with the Court by **July 5, 2016**. The Court sets a hearing on the motions in limine on **July 18, 2016,** at 10:00 a.m.  Appearances via Courtcall are authorized.

The parties are reminded they may still object to the introduction of evidence during trial.

**N.    STIPULATIONS**

The parties stipulate that copies may be used in place of originals.

**O.    AMENDMENTS/ DISMISSALS**

None at this time.

**P.    SETTLEMENT NEGOTIATIONS**

The parties have engaged in informal settlement discussions, but Plaintiff has not made a settlement demand to Defendants.

**Q.    AGREED STATEMENT**

None

**R.    SEPARATE TRIAL OF ISSUES**

None.

**S.    APPOINTMENT OF IMPARTIAL EXPERTS**

None requested.

**T.    ATTORNEYS' FEES**

If successful at trial, Plaintiff will be seeking attorney fees.  Similarly, Defendants will seek attorney fees pursuant to 42 U.S.C. §§ 1988, 1927.

**U.    TRIAL DATE/ ESTIMATED LENGTH OF TRIAL**

Jury trial is set for **July 26, 2016**, at 8:30 a.m. before the Honorable Jennifer L. Thurston at the

United States Courthouse, 510 19th Street, Bakersfield, California.  Trial is expected to last no longer than 5 days.

## V.     TRIAL PREPARATION AND SUBMISSIONS

### 1.     Trial Briefs

The parties are relieved of their obligation under Local Rule 285 to file trial briefs. If any party wishes to file a trial brief, they must do so in accordance with Local Rule 285 and be filed on or before **July 18, 2016**.

### 2.     Jury Voir Dire

The parties are required to file their proposed voir dire questions, in accordance with Local Rule 162.1, on or before **July 8, 2016**.

### 3.     Statement of the Case

The parties **SHALL** file a joint non-argumentative, brief statement of the case which is suitable for reading to the jury at the outset of jury selection on or before **July 8, 2016**.  In the event they cannot agree on a joint statement, each side SHALL file a non-argumentative, brief statement of the case on or before **July 8, 2016.**

### 4.     Jury Instructions & Verdict Form

The parties shall <u>serve</u>, via e-mail or fax, their proposed jury instructions in accordance with Local Rule 163 and their proposed verdict form on one another no later than on or before **June 13, 2016**. The parties shall conduct a conference to address their proposed jury instructions and verdict form no later than on or before **June 20, 2016**.  At the conference, the parties **SHALL** attempt to reach agreement on jury instructions and verdict form for use at trial. The parties shall file all agreed-upon jury instructions and verdict form no later than on or before **July 8, 2016**, and identify such as the agreed-upon jury instructions and verdict forms. At the same time, the parties **SHALL** lodge via e-mail a copy of the joint jury instructions and joint verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

**If and only if, the parties after genuine, reasonable and good faith effort** cannot agree upon certain specific jury instructions and verdict form, the parties shall file their respective proposed (disputed) jury instructions and proposed (disputed) verdict form no later than on or before **July 8,**

**2016**, and identify such as the disputed jury instructions and verdict forms.  At the same time, the parties **SHALL** lodge via e-mail, a copy of his/their own (disputed) jury instructions and proposed (disputed) verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions or California's CACI instructions to the extent possible.  All jury instructions and verdict forms shall indicate the party submitting the instruction or verdict form (i.e., joint, plaintiff's, defendant's, etc.), the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the **complete** text of the instruction, and the legal authority supporting the instruction.  Each instruction SHALL be numbered.

**W.    OBJECTIONS TO PRETRIAL ORDER**

Any party may, within 10 days after the date of service of this order, file and serve written objections to any of the provisions set forth in this order. Such objections shall clearly specify the requested modifications, corrections, additions or deletions.

**X.    MISCELLANEOUS MATTERS**

None.

**Y.    COMPLIANCE**

Strict compliance with this order and its requirements is mandatory.  All parties and their counsel are subject to sanctions, including dismissal or entry of default, for failure to fully comply with this order and its requirements.

IT IS SO ORDERED.

Dated:   **May 17, 2016**                            **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE