1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT
9                    EASTERN DISTRICT OF CALIFORNIA
10

11  JESSE TREVINO,                    ) Case No.: 1:14-cv-001873 - JLT
                                      )
12        Plaintiff,                  ) ORDER ON MOTIONS IN LIMINE
                                      )
13        v.                          ) (Docs. 46, 48, 49, 50, 51, 52)
                                      )
14  CITY OF BAKERSFIELD, et al.,      )
                                      )
15        Defendants.                 )
                                      )
16

17    Plaintiff Jesse Trevino, who is deaf, asserts that Bakersfield Police Officer Ryan Miller used

18 excessive force in the course of detainment.

19 **II.    Legal Standards Governing Motions in Limine**

20    "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the

21 practice has developed pursuant to the district court's inherent authority to manage the course of trials."

22 Luce v. United States, 469 U.S. 38, 40 n. 2 (1984).  The Ninth Circuit explained motions in limine

23 "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially

24 prejudicial evidence in front of a jury." Brodit v. Cabra, 350 F.3d 985, 1004-05 (9th Cir. 2003)

25 (citations omitted).

26    Importantly, motions in limine seeking the exclusion of broad categories of evidence are

27 disfavored.  See Sperberg v. Goodyear Tire and Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975).  The

28 Court "is almost always better situated during the actual trial to assess the value and utility of

evidence." Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). The Sixth Circuit explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in trial]" as opposed to ruling on a motion in limine. Sperberg, 519 F.2d at 712. Nevertheless, motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." Jonasson v. Lutheran Child & Family Services, 115 F.3d 436, 440 (7th Cir. 1997).

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence," C & E Services, Inc. v. Ashland Inc., 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province of the jury. See Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 150 (2000).

Moreover, the rulings on the motions in limine made here does not preclude either party from raising the admissibility of the evidence discussed here, if the evidence adduced at trial demonstrate a change of circumstances that would make the evidence admissible. In this event, the proponent of the evidence **SHALL** raise the issue outside the presence of the jury. Finally, the rulings made here are binding on all parties and not merely to the moving party.

## II.     Plaintiff's Motions in Limine

### A.     Plaintiff's Motion in Limine #1 to exclude evidence not known to Miller at the time of the use of force

The plaintiff seeks to exclude any evidence of which Officer Miller was unaware at the time he decided to use force. (Doc. 48) In particular, he seeks to exclude evidence related to the events leading up to the encounter, "including his court appearance and arguments with family members," images of the front door to the plaintiff's apartment with a rock nearby that is claimed to have been used by the plaintiff to gain entry, and any information about his prior contacts with any BPD officers including David Brantley and Deron Miller. Id. at 4.

Defendants argue the evidence is pertinent to the plaintiff's damage claim, that it corroborates their position that the plaintiff was acting erratically and to impeach the plaintiff's claim that he cannot hear. (Doc. 56 at 4)

Notably, officers' conduct is evaluated from the perspective of a reasonable officer on the scene regardless of the actual motivation of the particular officers. Graham v. Connor, 490 U.S. 386, 397

(1989).  "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 806 (1996).  Instead, liability may not attach unless his actions were objectively unreasonable, regardless of the officer's motivation. Ashcroft v. al-Kidd, 563 U.S. 731 (2011) ["the Fourth Amendment regulates conduct rather than thoughts . . .]

On the other hand, what is known to the officer at the time bears on the facts and circumstances of the event. Ruvalcaba v. City of Los Angeles, 64 F.3d 1323, 1328 (9th Cir. 1995).  Thus, any evidence known to Ryan Miller is admissible but information not known to him, is not.

### 1. Pictures of the rock and the damaged door

Defendants argue these pictures should be admitted because they demonstrate that the plaintiff was attempting to break into the apartment.  (Doc. 56 at 5) However, there is no dispute that this was the case.  Likewise, there is no dispute that Ryan Miller was told by the dispatcher that the plaintiff was attempting to break into an apartment.

However, there is no showing that Ryan Miller was or was not aware that the plaintiff attempted to gain entry into the apartment by using a rock or that the plaintiff damaged the apartment's door.  On the other hand, the plaintiff's conduct was such that it gained the attention of a neighbor who called 911 as a result.

The Court presumes that the plaintiff will testify that he attempted to break into his apartment using a rock.  If this is the case, the pictures of the damaged door and rock are relevant if only to allow the jury to see where the "break-in" attempt occurred.  Moreover, though the photos are of minimal probative value, their prejudicial effect is even slighter.  Thus, the motion as to the photos is **DENIED**.

### 2. Earlier contacts with the police

The defendants note that five days before the incident, a tenant made a report that the plaintiff was "acting suspiciously" outside of another apartment and may have attempted to open the front door. (Doc. 56 at 5-6) They claim also was that he opened a package and took a blanket left on the neighbor's porch. Id. at 6.

The defendants report that four days before the incident, the plaintiff "loitered" near a fire hydrant on the property and when the police arrived, he attempted to remove his pants and shoes and

1  told police he was going swimming. (Doc. 56 at 6.) He was arrested on this day after the officer
2  discovered the plaintiff had an outstanding warrant. Id.
3        Neither of these incidents bears on whether Ryan Miller used force appropriate to the
4  circumstances and, therefore, may not be introduced for this purpose. At the hearing, the plaintiff's
5  counsel clarified that the plaintiff was not claiming that the incident with Officer Miller or the resulting
6  physical injuries impact his ability to form relationships—only that the remnants from the physical
7  injury impact, for example, whether he can pick up his grandchild. Thus, the evidence does not bear on
8  the question of damages as suggested by the defendants. Thus, the motion is **GRANTED**. However,
9  in the event the plaintiff seeks to demonstrate that the damages he suffered in the incident impacts his
10 relationships with others, then the defendants would be entitled to introduce this evidence to
11 demonstrate the plaintiff's ability to engage in such relationships.
12       **B.**     **Plaintiff's Motion in Limine #2 to exclude evidence that the plaintiff appeared to**
13 **hear**
14       The plaintiff seeks to exclude evidence of a contact with Samantha Hsu, a MET worker called
15 to the scene to evaluate the plaintiff after the incident. (Doc. 49 at 1) The plaintiff reports that Ms. Hsu
16 noted that she believed the plaintiff was able to hear some of the questions she asked him. Id.
17 Likewise, the plaintiff seeks to preclude introduction of excerpts of his own deposition which,
18 apparently, defendants contend bears on whether he appears to hear. Id.
19       The plaintiff argues that the evidence from Ms. Hsu—who is not qualified to determine whether
20 the plaintiff is or is not deaf—would constitute an attempt to offer lay opinions on a topic reserved to
21 an expert.
22       The defendants argue the evidence should be admitted to impeach the plaintiff's claims that he
23 is deaf. However, the question is not whether the plaintiff is deaf but whether it reasonably appeared to
24 Officer Miller that the plaintiff heard the orders Miller gave him. Moreover, it does not appear that the
25 defendants have a good faith belief that the plaintiff is not, indeed, deaf. Rather it appears the
26 defendants would introduce the evidence only to show that in the circumstances of the contact between
27 Hsu and the plaintiff or in the deposition setting, that they and Hsu thought that the plaintiff could hear
28 some of the questions. These circumstances are not similar to those confronting Ryan Miller or

confronting the plaintiff at the time of his interaction with Officer Miller.[1]  Thus, the motion is **GRANTED** and the evidence may not be introduced to demonstrate corroborate Officer Miller's perception that the plaintiff can hear.[2]

### C. Plaintiff's Motion in Limine #3 to exclude evidence that the plaintiff appeared to act erratically days before the incident

The plaintiff seeks to exclude evidence from Samantha Hsu who evaluated the plaintiff the day of the incident and found he was not in need of a Welfare and Institutions Code § 5150 hold, that he had prior contacts with the Bakersfield Police Department and that his brother described the plaintiff as acting erratically days before the incident. (Doc. 50 at 2)  The plaintiff argues none of this evidence is pertinent to whether Ryan Miller used reasonable force. Id. at 4.

Plaintiff relies on Fed. R. Evid. 404(a) precludes the introduction of evidence of conduct occurring on other occasions as evidence to prove how he was acting at the time of the incident. Notably, evidence of crimes, wrongs, or prior bad acts is inadmissible "to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). However, evidence of conduct occurring before the incident may be admitted for other reasons "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Id. The rule does not "flatly prohibit the introduction of such evidence," but limits the purposes for which it may be introduced. Huddleston v. United States, 485 U.S. 681, 687 (1988).

In Palmquist v. Selvik, 111 F.3d 1332, 1340 (7th Cir. 1997), the court excluded prior conduct evidence and stated,

> The excluded evidence would have shifted the jury's attention from Palmquist's behavior at the scene, which is material in judging the objective reasonableness of Sergeant Selvik's use of force, to information not possessed by Selvik, such as Palmquist's mental state and his physical behavior before the encounter. As we ruled in Wallace and Rascon, evidence relating to the plaintiff's mental and emotional state and past actions is not admissible in judging the use of excessive force. Because the

---

[1] For example, several conclusions may be reached only one is that the plaintiff can actually hear.  Indeed, an equally possible conclusion is that, in fact, the plaintiff has lost all meaning hearing but can make out the gist of the speaker's meaning by observing the body language, facial expression or lips of the speaker, whether he can hear.  Here, there is no evidence the plaintiff faced Officer Miller when the officer gave the orders.

[2] On the other hand, if this evidence were to be admitted, the Court would be required to allow the plaintiff to introduce evidence that he *is* deaf.  This would require testimony of experts and medical documents to support this position.  This would require an undue waste of time and would confuse the jury into thinking that this question is at issue and would divert the jury's attention from the true questions presented in this case.

excluded evidence in this case occurred outside the presence of the police, they had no personal knowledge of it.

Moreover, in Boyd v. City & Cnty. of San Francisco, 576 F.3d 938, 948-949 (9th Cir.2009), the Court held that when "what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible." Boyd held that the prior conduct evidence "was highly probative of the decedent's conduct, particularly in light of [the decedent's] alleged erratic behavior ...." Id. at 949. However, Boyd did not suggest that where there is no dispute over what the officer perceived, may the Court admit evidence of prior conduct. Rather, in Hayes v. County of San Diego, 736 F.3d 1223, 1227 (9th Cir.2013), the Ninth Circuit determined that the Court may admit evidence only that bears on the circumstances of which the officer was aware when using the force. Therefore, based upon the circumstances of this case, the motion is **GRANTED**.

**D.    Plaintiff's Motion in Limine #4 to preclude irrelevant questions of the plaintiff's expert, Roger Clark.**

The plaintiff seeks to preclude the defendants from asking Roger Clark questions that characterize the plaintiff's conduct as an attempted "home invasion" and the plaintiff as a "home invader." (Doc. 51 at 2). Likewise, the plaintiff seeks to preclude questions of Roger Clark about his experience using of force on women and whether he ever used deadly force. Id.

The defendants argue that because the plaintiff was attempting to break into a home, the plaintiff was an attempted "home invader." (Doc. 59 at 2) While technically accurate, the phrase "home invasion" is a term of art and, as commonly used, connotes a situation in which the criminal breaks into a home while it is occupied to rob the residents. Here, Officer Miller was aware of only that the plaintiff was attempting to break into an apartment. There is no evidence he was aware whether the apartment was occupied or, whether it was a vacant unit. Thus, while the defendants may refer to the plaintiff's actions as an attempted burglary—which may be a property crime only (*Beaver v. City of Federal Way*, 507 F.Supp.2d 1137, 1144 (W.D. WA 2007) [Describing a daytime residential burglary without visible weapons as "lessen[ing] the overall sense of danger."]; *Chew v. Gates*, 27 F.3d 1432, 1443, n. 11 (9th Cir. 1994) quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ["[T]he fact that 'an unarmed suspect has broken into a dwelling at night does not automatically mean he is physically

1  dangerous.'[Citations]. The [*Garner*] Court also took notice of statistics showing that burglaries only
2  rarely involve physical violence, and of the FBI's classification of burglary as a "property" rather than a
3  "violent" crime. *Id*."])—the Court finds that referring to him as a "home invader" or to his conduct as
4  an "attempted home invasion" (which, as a robbery, connotes a crime of violence) does not properly
5  use the phrases as they are commonly understood. In addition, the Court finds that using the phrases
6  would unduly prejudice the plaintiff and would lead to jury confusion.  Thus, to this extent the motion
7  is **GRANTED**.

8        On the other hand, the defendants note they have no intention of asking Roger Clark questions
9  related to deadly force or Clark's use of force on women unless the plaintiff/Mr. Clark opens the door.
10 (Doc. 59 at 3).  Thus, the motion is **GRANTED**.  However, if the plaintiff opens the door to these
11 questions or Mr. Clark's responses make these questions pertinent, the defendants may ask questions on
12 these topics.

13       **E.**      **Plaintiff's Motion in Limine #5 to limit the testimony of the defendants' expert**
14 **Curtis Cope**

15       The plaintiff seeks to preclude Curtis Cope from testifying as to the statistics underlying the
16 opinions that it is an unusual human response for people not to comply with an officer's orders and as
17 to the frequency of attacks on officers. (Doc. 52)  The defendants argue the statistics are relevant and
18 are publicly available documents. (Doc. 60)  However, the defendants report that they do not intend to
19 introduce the statistics themselves but intend to offer Mr. Cope's opinions upon which they are based.
20 Id. at 3.

21       An expert on police procedures may offer opinions as to how a reasonably well-trained officer
22 would respond in circumstances such as those confronting the officer who used force.  United States v.
23 Duncan, 42 F.3d 97, 101 (2d Cir.1994).  The expert may opine that a well-trained officer, when voice
24 commands fail to achieve the intended result, will act according to their training.  This includes
25 describing how a well-trained officer in California is trained and why the training is designed in this
26 fashion, assuming he knows.  Likewise, he may testify that officers are trained to be on alert to attacks
27 from suspects and why this is the case.  The Court agrees with the defendants that the particulars
28 related to the statistics form a reasonable basis for the expert's opinions, though absent a proper

foundation and an applicable hearsay exception, they should not be introduced. Thus, the motion is **DENIED**.

### III. Defendants' Motions in Limine

#### A. Evidence of prior complaints, investigations or lawsuits involving Ryan Miller

The defendants seek to exclude evidence of prior citizen complaints investigations or lawsuits involving Ryan Miller. (Doc. 46 at 9-11; Doc. 46 at 13-14) They argue these documents are not relevant to the issues raised in this litigation. Id. The plaintiff argues only that the motion fails to demonstrate the particularity needed for a motion in limine. (Doc. 61at 2) The Court disagrees.

Federal Rules of Evidence 404(a) prohibits introduction of evidence of other acts to prove liability. The Court agrees that unless there is a specific showing that prior complaints, investigations or lawsuits somehow bear on the issues raised in this litigation Fed.R.Evid. 404(b), they are irrelevant and will not be admitted. Thus, the motion is **GRANTED**.

#### B. Evidence of information from Ryan Miller's personnel file, including his training records and policies of the City of Bakersfield

Similar to their first motion, in their second motion, the defendants seek to exclude evidence from Ryan Miller's personnel file. (Doc. 46 at 11-12) Also, in their fourth motion, the defendants also seek to exclude Ryan Miller's training records and the policies and practices of the City related to "training, supervision, discipline and the like." Id. at 13.

The plaintiff argues that Miller's training records are contained within Officer Miller's personnel file and they should be admitted. (Doc. 61 at 2-3) The plaintiff argues also that he intends to offer evidence, not as to the content of Miller's training, but that Miller *was* trained on Learning Domain 37 which addresses, in part, procedures for officers dealing with deaf citizens. Id. at 4-5.

The Court agrees. Whether Officer Miller was properly trained according to POST standards or otherwise is substantially likely to bear on the issues. Moreover, the Court cannot image that the defendants will offer the testimony of a police procedures/use of force expert who does not rely upon the training Ryan Miller received. On the other hand, the plaintiff offers no opposition to excluding the remainder of Ryan Miller's personnel record. Thus, the motions are **DENIED** as to Ryan Miller's training records and the extent of his training but **GRANTED** as to the City's policies related to

1 training, supervision and discipline.

### C. Evidence of other acts of police misconduct

The defendants seek to exclude evidence related to other incidents of police conduct—namely, widely publicized incidents including, among others, "the Ferguson case, the Tamir case, the Silva case, the Ramirez case, the Gonzalez-Chavez case or even the recent news involving former officers Damacio Diaz and Patrick Mara." (Doc. 46 at 12) The defendants argue these events are irrelevant to the current matter, constitute hearsay and inadmissible character evidence and would be unduly prejudicial. Id. The plaintiff notes that he does not intend to mention these other cases and asks the Court to limit the defendants from mentioning these events as well. (Doc. 61 at 4) The Court agrees with both sides that these events may not be introduced either to inflame the jury against the defendants, to support a claim that the work of police officers is risky and dangerous or for any other reason. Thus, the motion is **GRANTED**.

### D. Evidence of Learning Domain 37

The defendants argue that POST Learning Domains, specifically Learning Domain 37, should not be admitted because it is hearsay and because the probative value of the learning Domains is substantially outweighed by their prejudicial effect. (Doc. 46 at 14)

The defendants rely upon Luong v. City & Cty. of San Francisco, 2013 WL 1191229, at *7 (N.D. Cal. Mar. 21, 2013). In Luong, the court allowed the City's training materials to be admitted and determined, "the Court agrees with Plaintiffs that the SFPD materials are relevant to the excessive force claim and Plaintiffs should be allowed to introduce such evidence at trial. The Court will instruct the jury, however, that such evidence does not set the legal standard for the reasonableness of the force used, but is merely probative." Id. After trial and apparently after the court excluded the introduction of Learning Domain 20, the plaintiff moved the court for a new trial on this basis. Luong v. SF City & Cty. 2013 WL 2389648, at *10 (N.D. Cal. May 30, 2013), aff'd sub nom. Luong v. City & Cty. of San Francisco Police Dep't, 630 F. App'x 691 (9th Cir. 2015). The court determined that a new trial was not warranted because the plaintiff relied upon the materials in cross-examining the defendants' expert and because the plaintiff failed to set forth an exception to the hearsay rule. Id.

Likewise, in Gonzalez v. City of Garden Grove, 2006 WL 5112757, at *5 (C.D. Cal. Dec. 4,

2006)—also cited by the defendants—the court held, "Plaintiffs' expert may base his conclusions on the contents of these training manuals, to the extent that he relied upon these documents in coming to his expert opinions. An expert may properly rely upon hearsay evidence. However, the manuals themselves are not admissible because they appear to be hearsay without an applicable exception."

The plaintiff argues that the content of Learning Domain 37 constitutes an adoptive admission because the City requires its officers to rely upon the POST training when the City does not have a pertinent policy on point. (Doc. 61 at 6-7) Exactly how the use of the Learning Domain by the City constitutes an adoptive admission by Ryan Miller is not clear. Indeed, the plaintiff admits that Ryan Miller testified that he did not recall receiving training on Learning Domain 37's instruction on communicating with deaf suspects. (Doc. 61 at 4-5) Moreover, while this *may* be an admission that Learning Domain 37 sets forth the proper method of contacting a deaf suspect as to the City, the plaintiff has failed to detailed how this is relevant to the City's liability. Clearly, an admission by the City does not address Officer Miller's liability.

In any event, the experts may refer to Learning Domain 37, the City's training materials and the City's policies *if* they are documents upon which they relied in forming their opinions. Likewise, Ryan Miller may be questioned about the whether he was trained on situations confronting him when he contacted the plaintiff and whether the training conformed to the relevant policies/materials and/or Learning Domain 37. Absent a showing that there is an exception to the hearsay rule, the document themselves will not be admitted. To this extent, the motion is **GRANTED**.

E. **Exhibits**

1. **Exhibit 2 -Photos of the plaintiff not produced during discovery**

The defendants argue that photos of the plaintiff with his family and while obtaining medical treatment should not be admitted because they were not produced in discovery.

Rule 26(e) of the Federal Rules of Civil Procedure requires a party who has responded to an interrogatory or who has made a disclosure under Rule 26(a) to supplement its response in a timely manner if the party learns that its response is incomplete and if the additional information has not otherwise been made known to the other party during the discovery process. A party is precluded from using the evidence at trial unless the failure to supplement was substantially justified or harmless.

Fed.R.Civ.P. 37(c)(1); R & R Sails, Inc. v. Ins. Co. of the State of Pennsylvania, 673 F.3d 1240, 1246 (9th Cir.2012) (the party facing the preclusion of evidence under Rule 37 "bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless").

The plaintiff reports that the photos were produced on June 15, 2016—41 days before trial—and argues that this complies with Fed.R. Civ.P. 26(a)(3) which requires the evidence to be exchanged at least 30 days before trial. (Doc. 61 at 7-8) Notably, however, this section notes that disclosures are to be made in the timeframe only if the Court has not ordered otherwise. Here, the Court ordered the parties to make initial disclosures and to supplement them as needed. (Doc. 20 at 2)

To determine whether the introduction of evidence should be precluded pursuant to Rule 37, the Court considers: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for it[s] failure to disclose the evidence." San Francisco Baykeeper v. West Bay Sanitary Dist., 791 F.Supp.2d 719, 733 (N.D.Cal.2011) (quoting Dey. L.P. v. Ivax Pharms., Inc., 233 F.R.D. 567, 571 (C.D.Cal.2005)).

Notably, the photo of the plaintiff and his family do not strictly demonstrate the type of activity the plaintiff engaged in before the incident. Indeed, the photos seem more directed to engendering sympathy from the jury. In particular, the "hiking" photo shows no activity at all; rather, it shows a family posing for a photo. (Doc. 46 at 121) The photo of the plaintiff standing in the waves holding a boogie board next to children, likewise, does not show his past capabilities and, again, seems more directed at demonstrating he is a family man. (Doc. 46 at 120) Thus, unless the plaintiff is seeking to demonstrate that the injury has impacted his family relationships, the photos are not relevant and their slight probative value is outweighed by the prejudicial effect. Thus, the motion is **GRANTED** as to these photos.

However, the photos of the plaintiff receiving medical care are relevant to the damage claim. (Doc. 46 at 122-124) At the time of the hearing, the defendants reported that these photos were produced timely by the plaintiff and indicated they no longer objected, assuming a proper showing for admission is made, to their introduction. Thus, to this extent the motion is **DENIED**.

///

### 2. Exhibit 6 – The BPD report

The defendants argue that the police report should not be admitted as hearsay. (Doc. 46 at 15) The plaintiff notes he does not seek to introduce it. (Doc. 61 at 8) Thus, the motion is **GRANTED**. However, the report may be used to refresh recollection, for impeachment or for other proper reasons.

### 3. Exhibit 11 – The report of Roger Clark

The defendants argue that the report of retained expert, Roger Clark, should not be admitted. (Doc. 46 at 16) They assert the report is hearsay and is cumulative. Id. The plaintiff notes he does not seek to introduce it. (Doc. 61 at 8) Thus, the motion is **GRANTED**. However, the report may be used to refresh recollection, for impeachment or for other proper reasons.

### 4. Exhibit 12 – Excerpts from the file of Curtis Cope

The defendants argue that the learning domains identified by the plaintiff's expert, Curtis Cope, should not be admitted for the reasons set forth in their motion in limine. (Doc. 46 at 16) The plaintiff takes the same position as set forth above. The Court's ruling is the same—it will not be admitted absent a showing that it does not violate the hearsay rule. To this extent, the motion is **GRANTED**.

### 5. Exhibit 16 – Deposition transcripts

The defendants argue that, though the plaintiff has identified deposition transcripts as exhibits, that they should not be admitted as cumulative and hearsay. (Doc. 46 at 16) The plaintiff does not intend to admit deposition transcripts. (Doc. 61 at 9) Thus, the motion is **GRANTED**. However, either side but may refer to them for impeachment, to refresh recollection or for other proper purposes.

### 6. Exhibit 18 – Certain medical records

The defendants argue that, though the plaintiff identified some medical records in the pretrial statement he wished to be admitted, others that he seeks to be admitted were not. (Doc. 46 at 16-17) In particular, the defendants object to the records from Hall Ambulance, Mercy South West Hospital, Orthopedic Spine & Hand Center, Mercy South West Billing, Kern County Mental Health Records, Pair & Marotta Physical Therapy, House Ear Clinic, Gary Zerlin, M.D, Dr. Malerich, Dr. Sabetian, and a Nerve Conduction Order. Id. Notably, Hall Ambulance and Mercy Hospital records *were* identified by the plaintiff in the pretrial order. Likewise, the plaintiff identified Orthopedic Spine & Hand Center in the pretrial statement, though due to a typo, "Hand" was written as "Head."

The plaintiff notes that all of the documents, except for two, were produced in response to subpoenas issued by the defendants to treatment providers. (Doc. 61 at 9)  However, the plaintiff no longer seeks, at least as of the time of the hearing on the motions in limine, no longer seeks to admit these exhibits.  Thus, to this extent the motion is **GRANTED**.

As to the two documents not produced during discovery, the plaintiff reports that these exhibits did not exist before the pretrial conference. (Doc. 61 at 9-10)  These exhibits were produced after treatment by Dr. Malerich, the plaintiff's retained expert, and provided via e-mail to the defendants soon thereafter.  Id.  At the time the plaintiff filed his opposition to the motion, the parties had not yet taken the deposition of Dr. Malerich so there was still the opportunity for the defendants to examine him as to the exhibits.  Id.  At the hearing, the Defendants agreed that, assuming a proper foundation is shown, they did not still object to the exhibits.  Thus, to this extent the motion is **GRANTED**

### 7.  Exhibit 19 – Medical illustrations

The defendants argue that the medical illustrations were not identified in discovery or part of the plaintiff's Rule 26 disclosure. (Doc. 46 at 17)  Thus, they argue the plaintiff should not be admitted.

The plaintiff notes that the illustrations will be used only by his expert to illustrate the injury as compared to a "normal" wrist, and will be used to cross-examine the defendants' expert.    Plaintiff's counsel agrees that the expert will lay a proper foundation for the illustration but that he does not intend to admit the illustration.

Demonstrative aids may be used in trial and are generally not admitted into evidence.  See United States v. Wright, 412 F. App'x 993, 993 (9th Cir. 2011); United States v. Walema, 194 F.3d 1319 (9th Cir. 1999.  Thus, to the extent that the demonstrative aids will not be admitted, the motion is **GRANTED**.

### 8.  Exhibit 22 -  Employment Records

The defendants argue the employment records are irrelevant because the plaintiff is not seeking damages for lost wages.  (Doc. 46 at 18) The plaintiff agrees that the records should not be admitted. (Doc. 61 at 11)  Thus, the motion is **GRANTED**.  However, the report may be used to refresh recollection, for impeachment or for other proper reasons.

### 9. Exhibit 7 – BPD policies

The defendants argue the policies of the BPD are irrelevant because the plaintiff dismissed the Monell claim and whether the officer's conduct conformed to BPD policies or did not conform, is irrelevant to whether he violated the Constitution.  (Doc. 46 at 18-19)  Though plaintiff's counsel argued that the policies bear on the negligence cause of action, counsel agreed that they do not address any element of the tort.  On the other hand, as discussed above, relevant policies, if relied upon the experts to form their opinions, may be discussed in their testimony and with Ryan Miller but, absent a foundational showing, including a showing the policies are not hearsay or there is a hearsay exception, the policies themselves will not be admitted.  Thus, the motion is **GRANTED** for the reasons set forth above in headnotes III. B. and III.D.

IT IS SO ORDERED.

Dated:   **July 18, 2016**                           **/s/ Jennifer L. Thurston**
                                                                       UNITED STATES MAGISTRATE JUDGE

14